Mark R. Thierman, Nev. Bar No. 8285
mark@thiermanbuck.com
Joshua D. Buck, Nev. Bar No. 12187
josh@thiermanbuck.com
Joshua R. Hendrickson, Nev. Bar No. 12225
joshh@thiermanbuck.com
Leah L. Jones, Nev. Bar No. 13161
leah@thiermanbuck.com
THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, Nevada 89511
Tel. (775) 284-1500
Fax. (775) 703-5027

*Attorneys for Plaintiffs MUSTAFA YOUSIF and SHARONE WALKER on behalf of themselves and all others similarly situated*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MUSTAFA YOUSIF and SHARONE WALKER on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>    vs.<br><br>THE VENETIAN CASINO RESORT, LLC; LAS VEGAS SANDS, CORP. and DOES 1 through 50, inclusive,<br><br>            Defendants. | Case No. 2:16-cv-02941-RFB-NJK<br><br>**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER LIMITING WRITTEN DISCOVERY REPONSES TO REPRESENTATIVE SAMPLING** |

Plaintiffs MUSTAFA YOUSIF and SHARONE WALKER on behalf of themselves and all others similarly situated hereby move the Court for a Protective Order limiting Defendants' written discovery to a representative sampling of employee-plaintiffs who have signed consent to join forms. *See Cranney v. Carriage Sevcs.,* 2008 WL 2457912 (D. Nev. 2008); *see also, Tyson Foods, Inc. v. Bouaphakeo,* 136 S. Ct. 1036, 1049 (2016) (representative or statistical

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

sample, including estimations of average time is reliable proof in proving elements of a relevant cause of action.).  Plaintiffs submit that Defendants are only entitled to discovery responses based on the precedent set forth by *Cranney*, courts in this District, the Ninth Circuit, and the majority of federal districts courts across the nation; otherwise to require each of the opt-in plaintiffs to engage in individualized discovery "would be unduly burdensome, expensive, and would contravene the remedial purpose and representative nature of claims brought under the FLSA." *Id.* *1

Plaintiffs make their request pursuant to LR 7-1 and 26-7 and attach the Declaration of Leah L. Jones with Exhibits in support of their Motion.

DATED: February 20, 2020

Respectfully Submitted,

THIERMAN BUCK, LLP

/s/ *Leah L. Jones*
Mark R. Thierman, Bar No. 8285
Joshua D. Buck, Bar No. 12187
Leah L. Jones, Bar No. 13161
7287 Lakeside Drive
Reno, Nevada 89511

*Attorneys for Plaintiffs*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This is a conditionally certified collective action on behalf of non-exempt hourly paid housekeepers who were required to complete work tasks off the clock and without pay and/or during their lunch period and missed breaks.  Plaintiffs seek a Protective Order limiting discovery to a statistically significant representative sampling of the opt-in plaintiffs who have signed consent to join forms.  Class-wide and individualized discovery, as requested by Defendants, would be inefficient, would undercut the representative nature of the collective action mechanism, is unnecessary and unreasonably burdensome in this case.  *See Cranney v. Carriage Servs., Inc.,*

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

2008 WL 2457912 (D. Nev. June 16, 2008) ("Permitting the full scope of discovery authorized by the Federal Rules of Civil Procedure would undermine the purpose of conditionally certifying a collective action and would be unreasonably burdensome and wasteful of the parties and court's resources." [limiting individualized discovery to 10 percent of opt-in plaintiffs]); *Coleman v. Circus Circus Casinos, Inc.,* No. 2:04-CV-0747-PMP-GWF, 2006 WL 8441914, at *8 (D. Nev. Jan. 26, 2006) (limiting discovery to a representative sample because of the burdensome nature of the questions, time and expense to respond). ***Indeed, Plaintiffs' Counsel provides a modest estimate of approximately 582.5 total hours or 73, eight hour days to respond to Defendants' requests.*** *See* Declaration of Leah L. Jones, hereinafter Jones Dec. at ¶¶ 7-9.   Moreover, Defendants' discovery request should be limited because the lion's share of the interrogatory requests do not go to the heart of the case and are therefore irrelevant and burdensome. *See e.g., Wellens v. Daiichi Sankyo Inc,* No. C-13-00581-WHO (DMR), 2014 WL 7385990, at *3-4 (N.D. Cal. Dec. 29, 2014) (limiting interrogatories to those that "go to the heart of the case" and were "therefore relevant, and not as burdensome" when taking into consideration the fact that the defendant employer "already had documentary evidence such as time sheets.").

Plaintiffs' allegations are based on the discrete and focused claim that non-exempt hourly paid housekeepers have not been paid for time completing required work tasks completed during lunch breaks and missed rest breaks, and/or before their regularly schedule shift, and after their regularly scheduled shift. *See* ECF No. 98, Fourth Amended Complaint, generally.   Requiring all 125 opt-in plaintiffs, plus the two named Plaintiffs to answer a 10-page, 23-question (plus 23 additional subpart) questionnaire, as well as respond to four additional separate requests for production of documents—in the form of pay records and time records that Defendants, not employees are required to keep—(*see* Ex. B – Questionnaire; reproduced below; and Exhibit B attached to the Jones Dec. at ¶ 6), is designed to intimidate the employee-plaintiffs in this case,

**THERMAN BUCK LLP**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thermanbuck.com www.thermanbuck.com

**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER LIMITING WRITTEN DISCOVERY
RESPONSES TO REPRESENTATIVE SAMPLING**

1   and also to unduly burden counsel, as well as create extra time and expense for both the Parties

2   and the Court.[1]

3       This Motion requests that this Court review the purposes underlying collective actions

4   and the case precedent from districts across the nation to grant Plaintiffs' request for a Protective

5   Order limiting discovery to a statistically relevant sampling of opt-ins of inquiries that go to the

6   heart to the case.

7   **II.   PERTINENT PROCEDURAL HISTORY**

8       Plaintiff Yousif filed his original complaint in the District Court in and for the County of

9   Clark, Nevada, on October 27, 2016.  Defendants removed to the United States District Court for

10  the District of Nevada, on December 19, 2016.  (ECF No. 1-1-4.)  Plaintiffs filed their First

11  Amended Complaint with jury demand, adding named Plaintiff Walker on January 4, 2017.

12  (ECF No. 7.)  The Parties requested, and the Court granted a stipulation to file a second amended

13  complaint on February 3, 2017.  (ECF No. 14.)  The SAC alleged eight (8) causes of action: (1)

14  Failure to pay wages for all hours worked in violation so 29 U.S.C. § 201 *et. seq*., (2) Failure to

15  pay overtime in violation of 29 U.S.C. § 207; (3) Failure to pay minimum wages in violation of

16  the Nevada Constitution; (4) Failure to compensate for all hours worked in violation of NRS

17  608.140[2] and 608.016; (5) failure to pay overtime in violation of NRS 608.104 and 608.018; (6)

18

19

20

21       [1] Defendants argue that each employee who has opted-in to the FLSA portion of this
22  action is required to respond to written discovery and document requests, due in part to the fact
    that a clerical error prevented Plaintiffs from timely seeking a protective order limiting the
23  number of responses to a statistically significant representative sampling.  *See* Declaration of
    Leah L. Jones, hereinafter Jones Dec. at ¶¶ 10-13.  Plaintiffs are not attempting to deny
24  Defendants of discovery under the FRCP and applicable case law; Plaintiffs simply seek a
    protective order to limit written discovery to issues that go directly to the heart of the case through
25  a statistically significant representative sampling of opt-in plaintiffs and in an effort to prevent
    the muddying of the issue of unpaid wages, thereby drastically reducing the costs of litigation for
26  both Parties, as well as reduce the expenditure of time and resources of the court.

27
       [2] Plaintiff made the requisite NRS 608.140 written demand on 10/18/16.
28

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

- 4 -
**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER LIMITING WRITTEN DISCOVERY
RESPONSES TO REPRESENTATIVE SAMPLING**

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

1   failure to timely pay all wages due and owing in violation of NRS 608.140 and 608.020-.050; (7)

2   breach of contract; and (8) violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.*[3]

3          Extensive motion work ensued including Defendants' Motion to Dismiss the SAC, which

4   was fully briefed as of April 18, 2017. (ECF Nos. 18, 33, 39.) Plaintiffs' Motion for Circulation

5   of Notice pursuant to § 216(b) was also fully briefed as of June 5, 2017. (ECF Nos. 36, 48, 50.)

6   During this time the Parties stipulated, and the Court granted various motions to extend the

7   discovery deadlines, including the deadline for Plaintiffs to file their Motion for FRCP 23 Class

8   Certification. (ECF Nos. 41, 53, 57.) Notably, ECF No. 57 stayed the briefing schedule of

9   Plaintiffs' FRCP 23 Class Certification Motion until the Supreme Court of Nevada ruled on

10  *Neville v. Eighth Judicial Dist. Court*, 133 Nev. Adv. Op. 95, 406 P.3d 499, 504 (Dec. 7, 2017).

11  Plaintiffs filed their notice of decision on December 8, 2017 alerting the Court that, in a

12  unanimous decision, the Supreme Court held that Nevada employees have a private right of

13  action to bring statutory wage claims pursuant to NRS 608.140, 608.016, 608.018, and 608.020-

14  .050. (ECF No. 63.)

15         Following a hearing on May 24, 2018, the Court took under submission Plaintiffs' Motion

16  for Circulation of Notice pursuant to 29 U.S.C. § 216(b) and granted in part and denied in part

17  Defendant's Motion to Dismiss. (ECF No. 83.) Based on the Court's Order the Parties stipulated,

18  and the Court granted Plaintiffs' leave to file a third amended complaint, which was filed on May

19  29, 2018. (ECF No. 84.) Defendant's filed a Motion to Dismiss the Third Amended Complaint

20  on June 12, 2018. (ECF No. 88.) The Parties Stipulated and the Court granted leave to file the

21  Fourth Amended Complaint (the operative complaint) on July 11, 2018. (ECF No. 97.)

22         The Court entered its Order approving Circulation of Notice on September 24, 2019.

23  (ECF Nos. 108, 109.) Notice was mailed on November 13, 2018.[4] The Parties stipulated and

24  the Court granted leave to dismiss Defendant Las Vegas Sands Corp. (ECF No. 113.) The Court

25        [3] The Parties were able to reach a settlement agreement on the FCRA claim, Plaintiffs'

26  Eighth Cause of Action. The Court granted final approval on 9/12/18. (ECF No. 107.)

27        [4] As of the date of filing 125 of 2,247 employees who were mailed an opt-in notice have

28  signed consent to join forms. *See* Exhibit A, attached to the Declaration of Leah L. Jones,
    hereinafter "Jones Dec." at ¶ 6, "Simpluris Claims Report 9.06.19."

**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER LIMITING WRITTEN DISCOVERY
RESPONSES TO REPRESENTATIVE SAMPLING**

further clarified, upon request from the Parties, the briefing schedule for Plaintiffs' Motion for R23 Class Certification.  (ECF No. 116.)  Plaintiffs filed their FRCP 23 Motion for Class Certification on April 1, 2019.  (ECF No. 126 – 126-7.)  The Parties requested and the Court granted a first extension of time for responsive pleadings in order for Defendants to conduct the deposition of Plaintiffs' data expert.  (ECF No. 128.)  The Parties requested and the Court granted a second extension of time for responsive pleadings in order for Defendants to have additional time to review and analyze Plaintiffs' data expert report.  (ECF No. 130.)  The Parties requested and the Court granted a third extension of time for responsive pleadings in order for Defendants to have additional time to review and analyze Plaintiffs' data expert report and supporting documents and determine whether a motion to strike was appropriate.  (ECF No. 133.)  The Court set Defendants' Opposition to Plaintiffs' FRCP 23 Motion for July 31, 2019 and Plaintiffs' Reply in support for August 31, 2019.  *Id.*

During the interim, Defendants propounded written discovery on 119 (including the two named Plaintiffs) of the 125 employees who have currently opted-in to the FLSA portion of the action.  *See* Exhibit B, attached to the Jones Dec. at ¶ 7, hereinafter "Discovery Questionnaire."  However, due to a clerical error, Defendants' discovery requests were not processed or calendared for response.  *See* Exhibit C, attached to the Jones Dec. at ¶ 10, hereinafter "Venetian Yousif Email Chain 06.06.19."

On June 4, 2019, Defendants alerted Plaintiffs to the fact that Plaintiffs had not responded to Defendants' written discovery requests (which are reproduced in section A below and attached as Exhibit B) via written correspondence.  *See* Jones Dec. at ¶ 10.  Plaintiffs acquiesced that Defendants are entitled to a representative sampling of responses as set forth under the rules and case precedent and exchanged written correspondence with Defendants supporting Plaintiffs' position.  *Id.*  ¶¶ 10-11.  The Parties also engaged in additional written correspondence and participated in a FRCP 37(a)(1) good faith telephonic meet and confer on June 19, 2019 prior to seeking assistance from the Court.  *See* Exhibit D, attached to the Jones Dec. at ¶ 11, hereinafter "6.17.19 Venetian adv. Yousif – Opt-In Questionnaire Dispute."  During the meet and confer, the Parties further discussed their respective positions and supporting case law.  *See* Exhibit E, attached

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER LIMITING WRITTEN DISCOVERY RESPONSES TO REPRESENTATIVE SAMPLING**

to the Jones Dec. at ¶ 12, hereinafter "6.19.19 Summary of Meet & Confer."  Plaintiffs proposed that the Parties come to a mutually agreeable percentage of opt-in members in order to prevent additional motion practice, time and expense.  *Id.*  Plaintiffs offered to provide double the district's percentage, confirming they would provide responses for 20% of the opt-ins plus the two named Plaintiffs.  *Id.*  Defendants' Counsel indicated a number near 50% might be agreeable.  *Id.*

The second meet and confer was held on June 26, 2019.  *See* Jones Dec. at ¶ 13. Defendants' position was that Plaintiffs' failed to timely seek a protective order and accordingly, Defendants would file a motion to compel responses from 100% of the opt-in plaintiffs.  *Id.*  This telephonic conference was not memorialized.  *Id.*  Shortly thereafter, Plaintiffs filed their Motion for Protective Order for Representative Sampling of Opt-In Plaintiffs for Written Discovery on June 28, 2019 and Defendants Opposed on July 12, 2019.  (ECF Nos. 134 and 136.)  Plaintiffs did not file a Response in support of the request for a protective order because after a change in defense counsel, the Parties agreed to mediation and the Court granted a Stay.  (ECF No. 139.).

The first mediation was unsuccessful and the Parties agreed to and the Court granted an extension of the Stay to allow for a subsequent half day mediation set for February 28, 2020 (ECF No. 151), which was cancelled by Defendants.  *See* Jones Dec. at ¶ 15.  The Stay provided that should the Parties mediation attempts fail, the Parties shall set forth a proposed briefing schedule to address both (1) Plaintiffs' Motion for a Protective Order (ECF No. 134) and (2) Plaintiffs' Motion for FRCP 23 Class Certification (ECF NO. 126).  The week of February 3 through 7, 2020, the Parties met and conferred via email to discuss the proposed briefing schedules as well as a proposed discovery plan and scheduling order for all remaining discovery, including the Parties competing positions on the scope of opt-in discovery and Plaintiffs' Motion for a Protective order.  *See* Jones Dec. at ¶ 17.  The Parties agreed that the Court's ruling on Plaintiffs' Motion for a Protective Order will have significant baring on the Parties' discovery strategies, deposition scheduling, and briefings for FRCP 23 class certification.  *Id.*  The Parties filed and the Court granted an Order setting deadlines for the Protective Order briefing, on February 12, 2020.  *See* ECF No. 155.

As a result, per the Chamber Procedures of the Honorable Judge Boulware, and in

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER LIMITING WRITTEN DISCOVERY
RESPONSES TO REPRESENTATIVE SAMPLING**

compliance with ECF No. 155, Plaintiffs re-submit their Motion for Protective Order Limiting Written Discovery Responses To A Representative Sampling of Opt-In Plaintiffs.

**III.**  **LR 26-7(a) Full Text of Discovery Originally Sought**

Plaintiffs have attached a sample of Defendants' Questionnaire to the Jones Dec. at ¶ 7 as Exhibit B.   However, in accordance with LR 26-7(a) Plaintiffs set out the full text of the discovery sought here:

## QUESTIONNAIRE

1.  **Personal Information.**  Provide the following information about yourself:

| First Name, Middle Initial, Last Name | |
|---|---|
| Any nicknames, aliases, or prior legal names | |
| Date of Birth | |
| Social Security Number | |
| Address | |
| Cell Phone Number | |
| Email Address(es) | |

2.  **Employment Information.**  Provide the following information about your employment with Venetian/Palazzo:

| Position | Dates of Employment | Name of Supervisor(s) | Employee I.D. No. |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

3.  **Bankruptcy Information.**      From October 27, 2009 to the present, have you ever filed for bankruptcy?
Yes_____ No _____.
If yes, provide the following information:

| Date Filed | Name of Court | Case Number | Status |
|---|---|---|---|
| | | | |
| | | | |

4.   Within the last ten (10) years, have you been convicted of, or entered a plea regarding, any crime (excluding minor traffic offenses)?
Yes_____ No_____

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com  www.thiermanbuck.com

**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER LIMITING WRITTEN DISCOVERY RESPONSES TO REPRESENTATIVE SAMPLING**

If yes, for each conviction or plea, provide the name and location of the agency or court where you were convicted or pled, the date of the conviction or plea, and describe the crime you were convicted of committing or that you pled to:

| Date of Conviction or Plea | Name of Court | Description of Crime |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

5.    From October 27, 2013 to the present, were you required to record your time worked at Venetian/Palazzo?

Yes ___ No ___

If yes, describe how you recorded your time worked: _____.

6.    As a Housekeeper at Venetian/Palazzo, on average, approximately how many hours did you work each day? _____ each week? _____

7.    Did you work in the same area of the Venetian/Palazzo property each day?

Yes ___ No ___

If no, describe how you determined which area of Venetian/Palazzo property you would work at each day: _____.

**Work Performed *Before* Clocking In** (note: you will be asked about time spent after clocking out later in the Questionnaire)

8.    While working at Venetian/Palazzo, did you work without pay **before clocking in**?

Yes ___ No ___

If you answered "Yes,"

a.  Describe the work you performed **before clocking in:**_____.

b.  How often did you perform work **before** clocking in without pay?  (e.g., daily, 1 to 4 times per week, monthly, etc.): _____.

c.  On average, how much time, on a daily basis, did you spend performing work before you clocked in?_____ .

**<u>Work Performed After Clocking Out</u>**

9.    Did you ever perform work at the end of your **shift after you clocked out** of Venetian/Palazzo's timekeeping system?

Yes ___ No ___

If you answered "Yes,"

**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER LIMITING WRITTEN DISCOVERY RESPONSES TO REPRESENTATIVE SAMPLING**

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

Describe the work you performed after clocking out: _____.

a.       How often did you perform work after clocking out without pay? (e.g., daily, 1 to 4 times per week, monthly, etc.): _____.

b.       On average, how much time, on a daily basis, did you spend performing work **after you clocked out?** _____.

10.    If you were trained/told to perform work **before clocking in or after clocking out** of Venetian/Palazzo's timekeeping system, who trained/told you?

Before Clocking In _____.

After Clocking Out _____.

11.    Were you ever trained/told not to perform work **before clocking in or after clocking out** of Venetian/Palazzo's timekeeping system?    Yes ___ No ___

12.    Did you ever receive discipline for performing work before clocking in or after clocking out of Venetian/Palazzo's timekeeping system?
Yes ___ No ___

13.    Were you paid for time spent performing work before clocking in or after clocking out of Venetian/Palazzo's timekeeping system once it came to Venetian management's attention?
Yes ___ No ___

14.    From October 27, 2013 to present, identify each calendar week in which you claim you worked off the clock while employed by Venetian/Palazzo as a Housekeeper, and for each calendar week you claim you worked off the clock, state the total number of hours you claim you worked without pay: _____.

15.    Did Venetian/Palazzo provide you with a paid one-hour meal break every shift you worked as a Housekeeper for Venetian/Palazzo?
___ Yes ___No

16.    Did you take your meal break every shift you worked as a Housekeeper for Venetian/Palazzo?
___ Yes ___No

If you answered "no," to question 16,

a. On average, how many times per week did you take a meal break? _____

**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER LIMITING WRITTEN DISCOVERY RESPONSES TO REPRESENTATIVE SAMPLING**

b. Explain why you did not take a meal break every shift you worked as a Housekeeper for Venetian/Palazzo: _____

17. If you were trained/told to not take a meal break, who trained/told you? _____.

18. State the dollar amount of damages you claim and provide a computation and explanation of damages you seek, in this action. _____.

19. While employed by Venetian/Palazzo, did you submit a complaint about working time without pay, either internally to Venetian/Palazzo, or externally to an agency or court? Yes ____ No ____

If you answered "Yes," list the date of each complaint, identify who the complaint was submitted to, and please attach all documentation you have about the complaint you made about working unpaid time._____ .

20.    Have you discussed this case with anyone other than your attorneys? ____ Yes    ____ No

If you answered "Yes," identify anyone with whom you have discussed this case other than your attorneys, including their name, contact information, and whether they work, or have worked, for Venetian/Palazzo. _____.

21.    While employed with Venetian/Palazzo, did you work for, provide services to, or volunteer for any other business, company, sole proprietor, or entity?

Yes ____ No ____

If you answered "Yes," please state the name, address, and telephone number of the employer, the dates you worked, provided services, or volunteered, and the position or job title you held, if any. _____.

22.    From October 27, 2009 to the present, have you applied for employment outside of Venetian/Palazzo? Yes ____ No ____

If you answered "Yes," produce any and all documentation regarding job searches, including resumes that you submitted in paper form, electronically or posted on any social media site (LinkedIn, Career Builder, Glassdoor, Facebook, Google+, Classmates.com, Twitter, InstaGram, SnapChat, etc.).  This request includes copies of your emails, email forwards, and replies to emails, written and/or responded to, in conjunction with providing your resume in either paper, or electronic, form.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER LIMITING WRITTEN DISCOVERY RESPONSES TO REPRESENTATIVE SAMPLING**

23.     Have you used e-mail, other web-based communication services (i.e., instant messages, chat rooms, web logs ("blogs"), social networks, etc.) or text messaging to communicate about your work experiences?

Yes ___ No ___

If you answered "Yes," state the name of each e-mail service provider (i.e., Google, Yahoo, Hotmail, MSN, AOL, etc.) you have used to send or receive such information, the name of each web-based communication service provider (i.e., public blogs, news blogs, LinkedIn, Career Builder, Glassdoor, Facebook, Google+, Classmates.com, Twitter, Instagram, Snap Chat, etc.) for all web-based communication services you have used for such communications, and the name of each text messaging service provider (e.g., AT&T, Verizon Wireless, T-Mobile, etc.) for all such text messages you have sent or received.  For each provider identified above, state the following:

a. The e-mail address, the full URL (Uniform Resource Locator, a/k/a the "web address") or Facebook profile, or the texting number (a/k/a the cell phone number) used to have the communication: _____.

b. Your unique user ID: _____.

c. The e-mail associated with each social networking site: _____ .

## DOCUMENT REQUEST

Provide copies of the following that are in your possession, custody, or control:

a. All documents showing the hours you worked for, and the compensation paid to you by, Venetian/Palazzo as a Housekeeper including, but not limited to, pay stubs from October 27, 2013 to the present.

b. All documents showing records of any time worked for Venetian/Palazzo as a Housekeeper between October 27, 2013 and the present including, but not limited to, calendars, diaries, or journals.

c. All documents regarding your claim that you worked unpaid time while employed by Venetian/Palazzo as a Housekeeper between October 27, 2013 and the present.

d. All documents regarding your computation of damages.

## IV.     LEGAL ARGUMENT

FRCP Rule 26(c) provides that a party may move for a protective order where the motion includes a certification that the movant has in good faith conferred with the other affected party in an effort to resolve the dispute without court action.  FRCP 26(c)(1).  Here, in a good faith

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thermanbuck.com www.thermanbuck.com

effort to resolve the dispute without court intervention, the Parties have participated in three telephonic meet and confers and have exchanged multiple written correspondence providing case law supporting their respective positions.  *See* Jones Dec. ¶¶ 10-13, 17.  Despite the Parties' efforts, Plaintiffs now seek intervention from the Court.

Once the movant has certified that they have made a good faith effort to resolve the dispute with the other party, the court "may, for good cause, issue an order to protect a party [] from … undue burden or expense" by issuing an order on one of more of the following relevant subsections of FRCP 26(c)(1): (B) specifying terms, (C) prescribing a discovery method other than the one selected by the party seeking discovery, and/or (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters.  FRCP 26(c)(1).  For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted.  *Beckman Indus., Inc. v. International Ins. Co.,* 966 F.2d 470, 476 (9th Cir. 1992) (holding that "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test").  The Supreme Court of the United States has interpreted this language as conferring "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).

Moreover, FRCP 26(b)(2)(C) gives the court broad discretion to limit the frequency or extent of use of the discovery methods otherwise permitted by the FRCP.  Rule 26(b)(2)(C) gives the court discretion to conduct a proportionality analysis and limit discovery that is unreasonably cumulative or duplicative, obtainable from some other source that is more convenient, less burdensome or less expensive, and to limit discovery if "the burden or expense of proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Cranney,* 2008 WL 2457912 *3. Indeed, Magistrate Judge Leen recently reviewed the amendments to FRCP 26 and noted, "[d]iscovery overuse and abuse is depriving ordinary citizens, even those with considerable

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

means, of having their cases heard in federal court." *Roberts v. Clark Cty. Sch. Dist.,* 312 F.R.D. 594, 604 (D. Nev. 2016).

Applying these principles, the court should limit the written discovery to questions that go to the heart of the case, contain information that is not in Defendants' possession, and only require a statistically relevant sampling of opt-in to respond.

### A.   Requiring All Opt-In Plaintiffs To Respond To Written Discovery Is Contrary To The Law And Undercuts The Representative Nature Of The Collective Action Mechanism

"Minimum wage-and-hour laws support the dual objectives of protecting poorer workers from unfair treatment by employers and protecting law-abiding employers from unfair competition caused by unscrupulous employers who can undercut fair labor costs and thereby reduce their prices in order to garner larger market shares." *See* 123 Am. Jur. Trials 1 (Originally published in 2012). Indeed, the Congressional findings and declaration of policy of the FLSA at 29 U.S.C. § 202(a) cite the purpose of protecting workers and as a means of preventing unfair competition by employers. *See* 29 U.S.C. § 202(a); *see also, Williamson v. General Dynamics Corp.,* 208 F.3d 1144, 154 (9th Cir. 2000) *citing Barrantine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728, 739, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (The central purpose of the FLSA is to protect employees by setting "minimum wage and maximum hour provisions designed to protect employees."). And, the use of the collective action mechanism "serve[s] to lower the cost of litigation for individual claimants and promote efficiency in resolution of claims and the use of judicial resources.") *See Bollinger v. Residential Capital, LLC,* 761 F. Supp. 2d 1114, 1119 (W.D. Wash. 2011). Ordering discovery of all opt-in plaintiffs will only frustrate the FLSA's purpose to lower the cost of litigation.

In *Adkins v. Mid-Am. Growers, Inc.,* upon a FRCP 72(b) motion the court held that the magistrate judge's report and recommendation allowing for individual discovery was erroneous, noting that individualized discovery in FLSA cases pose a "tremendous burden" on opt-in plaintiffs and counsel. *See Adkins v. Mid-Am. Growers, Inc.,* 141 F.R.D. 466, 468 (N.D. Ill. 1992). The *Adkins* court noted, "Professor Newberg warns, '[t]he use of extensive and

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

complicated interrogatories and depositions by the party opposing the class may debilitate the putative class in such a way as to preclude certification by dissuading class members from continuing to assert their claims.'" *Id. citing,* Herbert B. Newberg, *Newberg on Class Actions* § 16.05 (Supp. 1989). "Individualized discovery of opt-in class members serves only to obfuscate the issues and drastically enhance the costs of litigation. Such a result cannot be countenanced." *See* Herbert B. Newberg, *Newberg on Class Actions* § 16.05 (Supp. 1989).

Limiting discovery to a representative sample of opt-ins rather than allowing individualized discovery is also consistent with the evidentiary standards for proving liability and damages in a FLSA case. *Id., see also, Tyson Foods, Inc. v. Bouaphakeo,* 136 S. Ct. 1036, 1049 (2016) (representative or statistical sample, including estimations of average time is reliable proof in proving elements of a relevant cause of action.) It is well-settled that not all opt-ins must provide testimony, but that representative evidence will suffice to prove liability and damages on a class-wide basis in FLSA overtime cases. *See Campbell v. City of Los Angeles,* 903 F. 3d 1090, 1116-17 (9th Cir. 2018) (types and amounts of damages distinctions do not preclude collective treatment for the purpose of resolving the common issue that *does* exist, and that must be answered in the first instance.) *citing, Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 797 (8th Cir. 2014), *aff'd*, ––– U.S. ––––, 136 S.Ct. 1036, 194 L.Ed.2d 124 (2016); *see also Mclaughlin v. Ho Fat Seto,* 850 F.2d 586, 589 (9th Cir. 1988) *citing Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687, 66 S. Ct. 1187, 1192 (1964).

Class-wide and individualized discovery, as requested by Defendants, would be inefficient and would undercut the representative nature of the collective action mechanism. *See Cranney v. Carriage Servs., Inc.,* 2008 WL 2457912 (D. Nev. June 16, 2008) ("Permitting the full scope of discovery authorized by the Federal Rules of Civil Procedure would undermine the purpose of conditionally certifying a collective action and would be unreasonably burdensome and wasteful of the parties and court's resources." [limiting individualized discovery to 10 percent of opt-in plaintiffs]); *see also Coleman v. Circus Circus Casinos, Inc.*, 2006 WL 8441914, at *8 (D. Nev. Jan. 26, 2006) (limiting discovery to a representative sample because of

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

the burdensome nature of the questions, time and expense to respond).  The majority of federal district courts also limit individualized discovery in collective actions.[5]

_____

[5] *See e.g.,* **Ninth Circuit**: *Wellens v. Daiichi Sankyo Inc.,* 2014 WL 7385990, at *3 (N.D. Cal. Dec. 29, 2014) (collecting cases) ("requiring full discovery from all opt-ins undermines the purpose and utility of collective actions; limiting discovery of 37 opt-in plaintiff out of 213 [17.37%] to 3 interrogatories, full discovery from named plaintiffs, and 25 depositions [11.7%]); *Wren v. RGIS Inventory Specialists,* Minute Order re discovery Disputes, (N.D. Cal. Mar. 31, 2008) (allowing discovery on 390 out of 5,684 opt-in class members or 6.86% in a case involving 270,000 potential opt-ins); *Prentice v. Fund for Pub. Interest Research, Inc.* 2007 WL 2729187, at *5 (N.D. Cal. Sept. 18, 2007) ("Individualized discovery is rarely appropriate in FLSA collective actions."); **Second Circuit**: *Scott v. Chipotle Mexican Grill, Inc.,* 2014 WL 2600034 (S.D. N.Y., June 6, 2014) (limiting discovery to only 15 opt-ins out of 582 total opt-ins [2.5%]); *Barrus v. Dick's Sporting Goods, Inc.,* 465 F. Supp. 2d 224, 231-32 (W.D.N.Y. 2006) (limiting discovery to representative sample); **Third Circuit**: *Craig v. Rite Aid Corp.,* 2012 WL 279647, at * 6 (M.D. Pa., Jan. 31, 2012) (noting that discovery was conducted on a representative sample of opt-ins); *Kuznyetsov v. West Penn Allegheny Health Sys.,* 2011 WL 6372852, at * 1 (W. D. Pa., Dec. 20, 2011) (noting that discovery was conducted on a sample of 75 out of a total of 824 plaintiffs [9.10%]; *Camesi v. Univ. of Pittsburgh Med. Ctr.,* 2010 WL 2104639, at *11 (W. D. Pa. May 24, 2010 (instructing the parties to take discovery on a  representative sample of opt-in plaintiffs); *McGrath v. City of Phila.,* 1994 WL 45162 at *2-3 (E.D. Pa. Feb 10, 1994) (finding discovery directed at all FLSA opt-in plaintiffs to be unduly burdensome); *Lusardi v. Xerox Corp.,* 118 F.R.D. 351, 354, (D.N.J. 1987) (parties used 51-person sample of class of more than 1,300 plaintiffs [3.92%]; **Fifth Circuit**: *Nelson v. American Standard, Inc.,* 2009 WL 4730166 at *3 (E.D. Tex. Dec. 4, 2009) (limiting written discovery to sample of 91 opt-in plaintiffs and named plaintiffs out of 1,328 class members [6.85%]; **Sixth Circuit**: *Gentrup v. Renovo Servs., LLC,* 2010 WL 6766418, at *7 (S.D., Ohio, Aug. 17, 2010) ("Individualized discovery undermines the purpose and utility of collection actions and therefore limiting discovery to a statistically significant representative sampling will both reduce the burden imposed on Plaintiffs and afford Defendants a reasonable opportunity to explore, discover, and establish an evidentiary basis for its defenses" rejecting defendant's request for full discovery from all 106 opt-ins and granting representative discovery consisting of written discovery from 31 plaintiffs and depositions from 16); *Smith v. Lowes Home Ctrs.,* 236 F.R.D. 354, 356 (S.D. Ohio 2006) (denying defendant's request for individualized discovery and deposition request of 150 of 1,500 opt-ins and instead ordering a statistically significant representative sampling); *Belcher v. Sohney's, Inc.,* 30 F. Supp. 2d 1010, 1024 (M.D. Tenn. 1998) (limiting discovery to a representative sample of opt-in plaintiffs is permissible); **Seventh Circuit**: *Adkins v. Mid-America Growers,* 141 F.R.D. 466, 466, 468-69 (N.D. Ill. 1992) (individualized discovery of all opt-in plaintiffs is inappropriate in an FLSA collective action, but representative testimony is permissible); **Eighth Circuit**: *Morales v. Farmland Foods, Inc.,* 2010 WL 3447513, *2-3, (D. Neb. Aug. 27, 2010) (limiting discovery to random sampling of 15% sample of 296 opt-ins [44] because, although relevant, discovery of all class members was undue burden that outweighed benefit, prohibiting class members who did not respond to discovery from testifying at trial); *Dernovish v. AT&T Operations, Inc.,* 720 F. Supp. 2d 1085, 1087-88 (W.D. Mo. 2010) (although

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER LIMITING WRITTEN DISCOVERY
RESPONSES TO REPRESENTATIVE SAMPLING**

### B.     This Court Should Limit The Individualized Discovery That Defendants May Obtain From The Opt-In Plaintiffs In This Case

#### 1.     Discovery should be limited to a statistically significant representation of opt-in plaintiffs.

Plaintiffs' proposed scope of discovery in this case is based the District Court's holding in *Cranney v. Carriage Services, Inc.*  In *Cranney,* employee plaintiffs brought a FLSA, Employees' Retirement Income Security Act ("ERISA"), and state law claims class action against the employer defendants. *Id.* at *1.  In *Cranney,* plaintiffs sought a protective order limiting the scope of discovery to the effect that the opt-in plaintiffs would need not individually respond to defendant's discovery request on the ground that such individualized discovery would be unduly burdensome, expensive, and would contravene the remedial purpose and representative nature of claims brought under the FLSA. *Id.*  As an alternative, the *Cranney* plaintiffs proposed a statistically significant representative number of opt-ins who could respond to discovery.  The *Cranney* defendants opposed plaintiffs' request on the grounds that each individual opt-in was advised that they may be asked to participate in discovery[6], and that defendant needed the information to support their decertification motion.

Magistrate Judge Leen ruled that defendants could conduct full discovery as to the named plaintiffs, but limited the individualized discovery that defendants could obtain from the opt-in

---

relevant, discovery of all class members was undue burden that outweighed benefit); **Tenth Circuit**: *Nelson v. Am. Standard, Inc.,* 2009 WL 4730166, at *3 (E.D. Tex. Dec. 4, 2009) (rejecting defendant's request for written discovery from all 1,328 plaintiffs and ordering discovery from a "statistically acceptable representative sample" of only 91 plaintiffs [8.85%]); *Greer v. Challenge Fin., Inv'rs Corp.,* 2007 WL 1341774 (D. Kan. May 4, 2007) (refusing to allow defendant to take depositions from all 272 opt-in plaintiffs, and requiring parties to meet and confer prior to filing any motions for leave to take depositions of any opt-in plaintiffs); **Eleventh Circuit**: *Bradford v. Bed Bath & Beyond,* 184 F. Supp. 2d 1342 (N.D. Ga 2002) (allowing parties to conduct discovery from 25 opt-in plaintiffs, named plaintiffs, and six other opt-in plaintiffs chosen by defendant out of 300 opt-ins [8.33%]).

[6] The Notice provided to potential opt-in plaintiffs in this case did not include any language alerting potential opt-ins that they may have to participate in the discovery process. *See* ECF No. 112, Exhibit A.

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER LIMITING WRITTEN DISCOVERY RESPONSES TO REPRESENTATIVE SAMPLING**

plaintiffs to ten per cent (10%) of such opt-in plaintiffs.[7] *Id.* at *3.  Magistrate Judge Leen based her decision on the broad discretion and authority granted under FRCP 26(b)(2)(c), which gives courts the ability to "conduct a proportionality analysis and limit discovery that is unreasonably cumulative or duplicative … less burdensome or less expensive, and to limit discovery if the burden or expense of proposed discovery outweighs its likely benefit …." *Id.* (internal quotations omitted.)  Magistrate Judge Leen also instructed the parties "to meet and confer … to identify [] mutually acceptable … opt-in plaintiffs from whom defendants may obtain discovery." *Id.* Furthermore, in *Coleman v. Circus Circus Casinos, Inc.,* the Honorable Magistrate Foley held that all opt-in plaintiffs were not required to answer or respond to the defendant employers' discovery requests noting, "[e]vidence concerning each individual plaintiff's job duties and responsibilities on a week-by-week and product-by-product basis is not essential. Because the court has already determined the plaintiffs are 'similarly situated,' individual depositions and interrogatories are not appropriate.  *See Coleman v. Circus Circus Casinos, Inc.,* No. 2:04-CV-0747-PMP-GWF, 2006 WL 8441914, at *5 (D. Nev. Jan. 26, 2006) (internal citation omitted). Magistrate Judge Foley also recognized that "many, if not most of the individual discovery requests are not likely to be readily understandable to lay persons and will likely require substantial assistance from an attorney or paralegal in order for plaintiffs to accurately answer or respond to the individual discovery requests."  *Id.* at *8.

Here, Defendants' questionnaire will require attorney and paralegal time to explain the questionnaire, translate the questionnaire for non-native English speaking opt-ins[8] and translate opt-in plaintiffs' answers back into English to respond, review, and acquire verifications of the

---

[7] The potential class in *Cranney* consisted of 2,700 potential class members and 300 opt-ins.  Judge Leen limited the discovery to 10% of the total number of opt-ins, plus the named plaintiffs.  *Id.* at *3.

[8] At least eleven (11) of the consent to join forms were submitted from the Spanish translation of the Notice. *See* ECF Nos. 117-1 through 123-1, consents nos. 26, 31, 73, 79, 81, 102, 106, 108, 111, 113, 114. These will have to be translated twice (English to Spanish questionnaire, Spanish to English answers). And it is unknown if additional signatories have sufficient English skills necessitating particularized Class Counsel assistance.  *See* Jones Dec. at ¶¶ 8-9.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER LIMITING WRITTEN DISCOVERY RESPONSES TO REPRESENTATIVE SAMPLING**

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thermanbuck.com www.thermanbuck.com

formatted responses.  Defendants' questionnaire consists of 23 questions, and 23 subparts, plus four separate requests for production.  In the aggregate, that equates to 50 discovery requests per person or 6,250 requests.  *See* Jones Dec. at ¶ 6.  At least eleven (11) of the consent to join forms were submitted from the Spanish translation of the Notice.  *See* ECF Nos. 117-1 through 123-1, consents nos. 26, 31, 73, 79, 81, 102, 106, 108, 111, 113, 114.  These will have to be translated twice (English to Spanish questionnaire, Spanish to English answers).  *See* Jones Dec. at ¶ 7.  Additionally, the completed, formatted questionnaire will require staff time to collect verifications from each opt-in.  *Id.* And it is unknown if additional signatories have sufficient English skills that will necessitate Class Counsel's assistance.  *Id.* Non-native speakers will require a fluent paralegal to translate the document at approximately 10 hours (1 hour per page X 10 pages = 10 hours).  *Id.* A modest estimate of time for opt-in members to answer the questionnaire is approximately 3.5 hours (3 minutes per part X 46 = 138 minutes divided by 60 minutes = 2.3 hours, plus an additional hour to search for documents = just under 3.5 hours).  *Id.* Additional attorney and paralegal time to review and format responses and assist opt-ins, requiring more staff time to collect verifications of the completed formatted responses from each opt-in at 1 hour per respondent.  *Id.* Thus, non-native English speaking opt-ins will require 60.5 hours (3.5 hours plus 1 hour translation plus 1 hour review/verification = 5.5 X 11 = 60.5 hours) to respond to the Questionnaire.  *Id.*

A modest estimate of time for native English speaker opt-in members to answer the questionnaire is approximately 3.5 hours (3 minutes per part X 46 = 138 minutes divided by 60 minutes = 2.3 hours, plus an additional hour to search for documents = just under 3.5 hours).  *Id.* at ¶ 8.  Additionally, attorney and paralegal time to review and format responses and assist opt-ins, requiring more staff time to collect verifications of the completed formatted responses from each opt-in at 1 hour per respondent.  *Id.* Thus, each English speaking opt-in will require 513 hours (3.5 hours plus 1 hour review/verification = 4.5 X 114 = 513 hours) to respond to the Questionnaire.  *Id.* In addition, the 2 named plaintiffs will require 9 hours to respond as described above.  *Id.* at ¶ 9.  Accordingly, Defendants Questionnaire will take 582.50 hours or 73 eight hour days to respond (582.50 divided by 8 = 72.8125).  *Id.* at ¶ 9.  This burdensome circumstance

**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER LIMITING WRITTEN DISCOVERY RESPONSES TO REPRESENTATIVE SAMPLING**

1   is a factor Magistrate Judge Foley considered noting, "[t]he formal requirements for responding

2   to this type of discovery, i.e., re-typing the interrogatory or request followed by the typed answer

3   or response, will be time consuming in attorney/secretarial time, thereby further increasing the

4   time and expense of responding thereto." *Coleman*, 2006 WL 8441914 at *8.

5                    2.      Defendants' Questionnaire is overbroad, burdensome, and questions that

6                            do not go to the heart of the case *and/or* seek documents in Defendants'
                             possession should be eliminated.

7           In this case, as in other cases where courts have limited the scope of discovery in FLSA

8   actions, allowing individualized discovery "would only serve to obfuscate the issues and

9   drastically enhance the costs of litigation." *McGrath v. City of Philadelphia,* 1994 WL 45162

10  *3, 127 Lab. Cas. P 33,060 (E.D. Pa. Feb. 2, 1994). "Requiring full discovery from all opt-ins

11  undermines the purpose and utility of collective actions. Defendant does not need discovery

12  from every opt-in Plaintiff in order to mount a challenge to class treatment." *Wellens v. Daiichi*

13  *Sankyo Inc,* No. C-13-00581-WHO (DMR), 2014 WL 7385990, at *3 (N.D. Cal. Dec. 29, 2014).

14  This is especially true here for two reasons: first, because about half of the interrogatories do not

15  go to the heart of the unpaid work time issue, and second because the interrogatories and requests

16  for production—such as information relating to Plaintiffs' records of employment, including time

17  and pay information, is already in the possession of Defendants. By law, time and pay records

18  must be kept by the defendant employer not the employee. *See* 29 C.F.R. 516.2; U.S.C. § 211(c).

19          In *Wellens,* the court looked to the number of opt-in plaintiffs (248) and the type of

20  discovery sought, noting that three of the only four interrogatories "go to the heart of the case"

21  and were "therefore relevant, and not as burdensome" when taking into consideration the fact

22  that the defendant employer "already had documentary evidence such as time sheets." *Wellens,*

23  2014 WL 7385990, *3-4. The *Wellens* court ultimately denied defendant's request for discovery

24  responses from all of the opt-ins, and instead ordered responses from 37 opt-in plaintiffs on three

25  interrogatories. *Id.*

26          Here, the limitation of discovery to a few pointed interrogatories that go to the heart of

27  the case combined with the balanced approach employed by Magistrate Judge Leen in *Cranney*

28

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER LIMITING WRITTEN DISCOVERY
RESPONSES TO REPRESENTATIVE SAMPLING**

limiting discovery to a statistically significant representative sample would serve the Parties and the Court well in this case, by preventing the muddying of the issue of unpaid wages and drastically reducing the costs of litigation for both Parties.  Defendants seek written discovery responses form 125 opt-ins in the form of answering a 10-page, 23-questionnaire (plus 23 additional subparts), as well as three additional separate requests for production of documents— in the form of pay records and time records that Defendants, not employees are required to keep.  Furthermore, Defendants discovery requests are not all simple "yes" or "no" requests but require detailed information and recollection of specific dates, times, and or requests information that is not relevant to whether or not Defendants properly paid its housekeeping employees for work done on behalf and at the direction of Defendants.

Plaintiffs' complaint alleges Defendants failed to compensate the named plaintiffs and all members of the prospective class for work done off the clock due to missed lunch and meal breaks, and/or pre- and post-shift work.  *See* FAC, ECF No. 98, generally.  Each of the opt-in Plaintiffs are non-exempt hourly paid housekeepers, who allege that it was Defendants' practice and policy to require off the clock work through missed rest breaks, interrupted lunch periods and pre-shift work activities without compensation each and every single shift worked.  *Id.* at ¶ 17.[9]  Housekeepers were required to fill their carts with cleaning supplies and linens prior to clocking in for their regularly scheduled shift.  *Id.*  Employees could not complete their job duties without filling their carts and were not allowed to start their shifts unless and until their carts were filled with supplies needed to complete their job duties.  *Id.* at ¶ 18.  These tasks were completed off the clock and without compensation.  *Id.*  All class member housekeeping employees followed the same policy and procedure mandated by Defendants.  Post-shift, if a housekeeper was unable to finish their allotted rooms during their shift they were instructed to clock out and then finish cleaning their assigned rooms off the clock and without compensation.

---

[9] Plaintiffs provided declaration testimony from named Plaintiffs Yousif and Walker (ECF Nos. 36-3, 36-4) and five additional housekeepers (ECF Nos. 36-5 – 36-9) supporting Plaintiffs' Motion for Conditional Certification, plus an additional four declarations (ECF Nos. 50-1 – 50-4) supporting Plaintiffs' Reply in support, corroborating the class claims highlighted throughout this section.

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER LIMITING WRITTEN DISCOVERY RESPONSES TO REPRESENTATIVE SAMPLING**

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

*Id.* at ¶ 23. Extracting this unpaid work from Plaintiffs and all other housekeepers was achieved by having employees perform work without being logged in to the timekeeping system, pre-shift, post-shift, and during lunch periods. *Id.* at ¶¶ 16, 24. Plaintiffs and the opt-in plaintiff employees are not required to keep records of their time, instead it is the employer's duty to do so. *See* 29 C.F.R. 516.2; U.S.C. § 211(c). Plaintiffs cannot reasonably be expected to remember the specific information requested by Defendants such as exact dates, or be able to make a legal conclusion of the damages allegedly owed. *Dernovish v. AT&T Operations, Inc.,* 720 F. Supp. 2d 1085, 1087-88 (W.D. Mo. 2010) (This determination is based on a formula, not subjective testimony … There is also no great need to rely on the employees' memory to ascertain damages—the superior, more reliable evidence resides in Defendant's records.) Individualized written discovery exploring the same, as requested by Defendants, would be both fruitless and inefficient, especially because Defendants should already have this information in its own records. *See Cranney, supra,* at *3 (individualized discovery requests that are unreasonably cumulative and duplicative, where the burden and expense of these requests outweighed any likely benefit should be rejected.).

The bulk of the interrogatory requests in Defendants' Questionnaire and all of the Requests for Production should be eliminated for the reasons set forth as follows:

- Question 1 requests information including name, address, date of birth, social security number, address, phone, and email address that must be in the possession, custody and control of Defendants. *See e.g.* 29 C.F.R. 516.2; U.S.C. § 211(c); *Cranney, supra* (cumulative and duplicative).

- Question 2 requests employment information in the form of position, dates, supervisor, and employee i.d. specific to the Venetian/Palazzo. This information must be Defendants' possession, custody, and control as part of the human resources and payroll departments and it is Defendants' duty to keep this information not the employee. *See e.g.,* 29 C.F.R. 516.2; U.S.C. § 211(c); *Cranney, supra* (cumulative and duplicative); *Coleman, supra* (individual plaintiff's job duties and responsibilities on a week-by-week and product-by-product basis is not essential); *Wellens,* 2014 WL 7385990, *3-4 (limiting interrogatories that "go to the heart of the case" and were "therefore relevant, and not as

burdensome" when taking into consideration the fact that the defendant employer "already had documentary evidence such as time sheets.").

- Question 4 requests conviction history unlimited in scope other than to exclude minor traffic offenses.  Defendants require employees to submit to a background check prior to employment and thus this information should, for the most part already be in the possession of Defendants.  *See* ECF No. 107 granting final approval of Plaintiffs FCRA claims.  Inclusion of any conviction history is not relevant to whether Defendants properly paid its employees.  *See e.g., Cranney, supra* (cumulative and duplicative); *Wellens,* 2014 WL 7385990, *3-4 (does not go to the heart of the case).  Indeed, this question will only "serve to obfuscate the issues and drastically enhance the costs of litigation."  *McGrath,* 1994 WL 45162 at *3.  It is also likely to chill class participation as a form of "dissuading class members from continuing to assert their claims" as noted by the *Adkins* court in citing Professor Newberg.  *Adkins, supra, citing,* Herbert B. Newberg, *Newberg on Class Actions* § 16.05 (Supp. 1989).

- Question 5 requests whether employees were required to record their time worked at the Venetian/Palazzo.  This is information in Defendants' possession, custody, and control as part of the payroll department and it is Defendants' duty to keep this information.  *See e.g.,* 29 C.F.R. 516.2; *Cranney, supra* (cumulative and duplicative); *Coleman, supra* (individual plaintiff's job duties and responsibilities on a week-by-week and product-by-product basis is not essential); *Wellens,* 2014 WL 7385990, *3-4 (Defendant does not need discovery from every opt-in Plaintiff in order to mount a challenge to class treatment); *Dernovish,* 720 F. Supp. 2d at 1087 (There is also no great need to rely on the employees' memory to ascertain damages—the superior, more reliable evidence resides in Defendant's records.)

  o A subpart request how the time was recorded, information also in Defendants' control.  Evidence concerning *each* individual plaintiff's job duties and responsibilities on a week-by-week basis is not essential, because the court has already determined the plaintiffs are "similarly situated."  Indeed, all opt-in

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

plaintiffs worked as housekeepers at the Venetian and/or Palazzo and thus individual interrogatories are not appropriate because this information must be kept as part of Defendants human resources and payroll department requirements. *See e.g.,* 29 C.F.R. 516.2; *Cranney, supra; Coleman supra; Wellens, supra*; *Dernovish, supra.*

- Question 6 requests how many hours, on average, an employee worked each day and each week. To the extent this interrogatory requests recorded hours each day, must be kept as part of Defendants human resources and payroll department requirements. *See e.g.,* 29 C.F.R. 516.2; *Cranney, supra; Coleman, supra; Wellens, supra*; *Dernovish, supra.* To the extent that that this interrogatory seeks information about how much time housekeepers spent working without compensation, that would be appropriate. According, this interrogatories should be qualified.

- Question 7 requests what area of the Venetian/Palazzo the employee worked. Individual interrogatories are not appropriate because this information must be kept as part of Defendants human resources and payroll department requirements. *See e.g.,* 29 C.F.R. 516.2; *Cranney, supra; Coleman, supra; Wellens, supra*; *Dernovish, supra.*

  - As a subpart Defendants ask how "you [the employee] determined which area … you would work in. Also, information in Defendants possession, custody, and control because it is Defendants who determined housekeepers schedules and duty stations.[10] *See e.g.,* 29 C.F.R. 516.2; *Cranney, supra; Coleman, supra; Wellens, supra*; *Dernovish, supra.*

- Questions 10 and 11 request who trained employees on clocking in and out policies. Individual interrogatories are not appropriate because this information must be kept as part of Defendants human resources and payroll department requirements. *See e.g.,*

---

[10] Indeed, during the deposition of PMK, Director of Housekeeping Bruce Moore, Mr. Moore confirmed that housekeepers must check the schedules on the day of work to determine where they were supposed to be working that day and that the management assigns where the employee works. *See* Jones Dec. at ¶ 18, excerpts of Moore Deposition.

**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER LIMITING WRITTEN DISCOVERY RESPONSES TO REPRESENTATIVE SAMPLING**

footnote 10 (PMK testified management assigns employee workstations and schedules);
29 C.F.R. 516.2; *Cranney, supra; Coleman, supra; Wellens, supra*; *Dernovish, supra.*

- Question 12 requests if employees were disciplined for clocking time. Individual interrogatories are not appropriate because this information must be kept as part of Defendants human resources and payroll department requirements. *See e.g.,* 29 C.F.R. 516.2; *Cranney, supra; Coleman, supra; Wellens, supra*; *Dernovish, supra.*

- Question 21 asks if while employed at the Venetian/Palazzo did the employee work anywhere else. This is not relevant to the issue of whether the Defendants properly paid its employees; this request must be seen as an impermissible inquiry by Defendants for the purposes of singling out employees who must have two jobs to make ends meet and is merely a fishing expedition that arguably will open the employee up to retaliatory conduct. *See, e.g., McKennon v. Nashville Banner Pub. Co*., 513 U.S. 352 (1995) (Fishing expeditions into prior or current employers' records in employment cases are disfavored); *Wellens, supra* (does not go to the heart of the case). This line of questioning is also likely to chill class participation as a form of "dissuading class members from continuing to assert their claims" as noted by the *Adkins* court in citing Professor Newberg. *Adkins, supra, citing,* Herbert B. Newberg, *Newberg on Class Actions* § 16.05 (Supp. 1989).

  - As a subpart the employee is asked to list name, contact information, dates, worked, positions, and whether paid. This is not relevant information and is protected by the employees privacy interests for the same reasons expressed directly above.

- Question 22 asks if the employee has applied for employment outside the Venetian/Palazzo. For the same reasons set forth for question 21, this information is not relevant to the issue of whether the Defendants properly paid its employees; this request must be seen as an impermissible inquiry by Defendants for the purposes of singling out employees Defendants deem disloyal and may be used to subject the employees to retaliatory tactics.

  - As a subpart the questions request copies of all emails, documentation, correspondence regarding job searches including resumes, and social media

**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER LIMITING WRITTEN DISCOVERY
RESPONSES TO REPRESENTATIVE SAMPLING**

postings. These requests are overbroad and similarly not relevant. *See Mackelprang v. Fidelity National Title Agency of Nevada, Inc*., 2007 WL 119149, *7 (D. Nev. 2007) (mere speculation that the plaintiff may have communicated to her friends during the relevant time period, by e-mail, or, as in this case, by Facebook postings, does not justify, production of every thought she may have reduced to writing or, indeed, the depositions of everyone she may have talked to.) (internal quotations omitted).

- Question 23 requests any social media communications about "work experiences" with subparts requesting user id information. These requests are similarly not relevant and must be protected under the employee's privacy interests. *See Mackelprang, supra.; Wellens, supra* (does not go to the heart of the case).

Furthermore, each of the four document requests asks for information that should be in the possession, custody and control of Defendants because it is specific to (a) hours worked, compensation, and pay stubs from the Venetian/Palazzo; (b) Venetian/Palazzo time records; (c) all documents related to unpaid time at the Venetian/Palazzo; and (d) all documents regarding computation of damages. This information must be part of Defendants' human resources, housekeeping, and payroll department record keeping requirements and therefore must already be in Defendants' possession, custody, and control. *See e.g.,* 29 C.F.R. 516.2; U.S.C. § 211(c); *Cranney, supra* (cumulative and duplicative); *Coleman, supra* (individual plaintiff's job duties and responsibilities on a week-by-week and product-by-product basis is not essential); *Wellens,* 2014 WL 7385990, *3-4 (limiting interrogatories that "go to the heart of the case" and were "therefore relevant, and not as burdensome" when taking into consideration the fact that the defendant employer "already had documentary evidence such as time sheets.").

Plaintiffs urge the court to weigh the burdensomeness of these requests against their probative value and eliminate all questions that contain information in Defendants' possession, custody, and control.

## C.   Sanctions In The Form Of Full Opt-In Discovery Responses Are Not Warranted

THERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER LIMITING WRITTEN DISCOVERY RESPONSES TO REPRESENTATIVE SAMPLING**

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

Defendants' assertion that Plaintiffs should be required to provide responses for the 125 opt-in plaintiffs, plus the two named Plaintiffs as a sanction for an admitted clerical error is unfounded.  According to FRCP 6(b)(1) (B), "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time ... on motion made after the time has expired if the party failed to act because of excusable neglect."  FRCP 6(b)(1)(B).  In evaluating whether neglect is excusable, a district court must consider the four factors established by the Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*: (1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith ."  *See Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); *see also Mendez v. Knowles,* 556 F.3d 757, 765 (9th Cir. 2009) (quoting *Pincay v. Andrews,* 389 F.3d 853, 855 (9th Cir. 2004) (citing *Pioneer,* 507 U.S. at 395)).

### 1.      There is no danger of prejudice to the non-moving party.

As explained throughout this motion, Defendants will not be prejudiced by the requested protective order because individualized discovery undermines the purpose and utility of collective actions and Defendants do not need discovery from every opt-in Plaintiff in order to mount a challenge to collective treatment.  *Wellens,* 2014 WL 7385990, *3.  The discovery requested by Defendants would drastically enhance the costs of litigation for both parties (*see Coleman v. Circus Casinos, Inc.,* 2006 WL 8441914, *8; *McGrath v. City of Philadelphia,* 1994 WL 45162, *3) and evidence concerning *each* individual plaintiff's job duties and responsibilities on a week-by-week basis is not essential.  *Adkins v. Mid-Am. Growers, Inc.*, 143 F.R.D. at 174.  Additionally, the time and pay records requested are already in the possession of Defendants.  Moreover, Plaintiffs are not seeking to prevent Defendants from all discovery; Plaintiffs simply seek a Protective Order limiting the number of opt-ins responses to the district precedent of 10% or a statistically representative sample as determined by the Court.  Indeed, in addition to a statistically representative sample of employee testimony, evidence of the time and pay records

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

will bear out whether or not the defendant-employer's pay practices are in compliance with federal and state law.

Accordingly, a representative sampling will be sufficient for Defendants to draft their decertification motion and thus no danger of prejudice is present.

### 2. Length of delay and its potential impact on judicial proceedings.

The procedural history set forth in section II illustrates both Parties' willingness to extend professional courtesy to each other in an effort to narrow Plaintiffs' claims, streamline the litigation, and extend discovery and briefing schedules so that each Party has access to all relevant discoverable information. Indeed, Plaintiffs' Complaint has been amended four times and Defendants have been provided with three extensions of time to oppose Plaintiffs' Motion for FRCP 23 class certification. The Parties were granted two stays for the period between July 22, 2019 and February 7, 2020 to participate in mediation. No trial date has been set, and the Parties have provided the Court with a proposed updated Joint Status Report setting forth briefing schedule for refiling Plaintiffs' Motion for FRCP 23 class certification, and thus no motions are pending before the Court. There is no date set for dispositive motions, nor is there a deadline looming for Defendants' decertification motion, which, arguably is the reason for Defendants' requested discovery. Accordingly, Plaintiffs' request for a protective order and time to provide Defendants with responses will not unduly delay or negatively impact the judicial proceedings.

### 3. The reasons for the delay were excusable.

A clerical error in the processing of Defendants' discovery requests resulted in the failure of Plaintiffs to seek a protective order in a timely fashion. Plaintiffs would have immediately sought a protective order based on the precedent and legal analysis provided throughout this motion. This clerical error was inadvertent. Plaintiffs will provide discovery responses for the percentage set for by the Court.

### 4. Plaintiffs conduct was in good faith.

As soon as Plaintiffs were alerted to the failure to timely respond, Plaintiffs immediately contacted Defendants' counsel. Indeed, Defendants' counsel emailed at 4:54 p.m. and Plaintiffs emailed back at 5:09 p.m., the same day. *See* Jones Dec. at ¶ 10, Exhibit C. The Parties engaged

**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER LIMITING WRITTEN DISCOVERY RESPONSES TO REPRESENTATIVE SAMPLING**

1    in written correspondence and participated in three FRCP 37(a)(1) good faith telephonic meet

2    and confers prior to seeking assistance from the Court. *See* Jones Dec. at ¶¶ 10-13, 17. Plaintiffs

3    offered to provide double the district's percentage, confirming they would provide responses for

4    20% of the opt-ins plus the two named Plaintiffs, a compromise that has been rejected by

5    Defendants. *Id.* at 12-13.

6        Thus, all four factors illustrate that Plaintiffs' conduct was in good faith and Plaintiffs'

7    failure to timely seek a protective order is excusable neglect.

8    **V.    CONCLUSION**

9        Based on the foregoing, and in accordance with the principles of the holdings in *Cranney*,

10   courts in this District, the Ninth Circuit, and the majority of federal districts courts across the

11   nation Plaintiffs request that the Court grant Plaintiffs' request for a protective order, limiting the

12   required responses to Defendants' written discovery to questions that go to the heart of the action,

13   and are limited to a statistically relevant number of opt-in plaintiffs. Plaintiffs propose that all

14   named Plaintiffs and a statistically relevant percentage of the current opt-in plaintiffs respond to

15   Defendants' Discovery Questionnaire, specified as a random sampling of persons who have

16   executed a valid consent.[11]

17       Accordingly, Plaintiffs, on behalf of themselves, the opt-in plaintiffs, and all other

18   similarly situated housekeepers hereby request that this Court grant Plaintiffs' Motion for a

19   Protective Order limiting discovery to a s representative sampling of opt-ins for written

20   discovery.

21   DATED: February 20, 2020                         Respectfully Submitted,

22                                                     THIERMAN BUCK LLP

23

24                                                     /s/ *Leah L. Jones*
                                                       Leah L. Jones, Bar No. 13161
25                                                     *Attorneys for Plaintiffs*

26   _____

27       [11] Plaintiffs suggest every tenth person or fractional equivalent of an alphabetical list of
     the opt-in be required to respond to requests limited to question that go to the heart of the
28   allegations in the complaint. Plaintiff are open to any other random sampling as indicated by the
     Court.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email: info@thiermanbuck.com www.thiermanbuck.com

**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER LIMITING WRITTEN DISCOVERY
RESPONSES TO REPRESENTATIVE SAMPLING**

**THIERMAN BUCK LLP**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanbuck.com

## CERTIFICATE OF SERVICE

Pursuant for FRCP 5(b) and LR IC 4-1(d), I hereby certify that I am an employee of Thierman Buck Law Firm, and that on this the 20th of February 2020 I served a true and correct copy of the forgoing **PLAINTIFFS' MOTION FOR PROTECTIVE ORDER LIMITING WRITTEN DISCOVERY REPONSES TO REPRESENTATIVE SAMPLING** to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Molly M. Rezac
Mary C. Dollarhide
Brian Scott Kaplan

*Attorneys for the Defendants*
*The Venetian Casino Resort, LLC*
*Las Vegas Sands, Corp. and*
*Does 1 through 50, inclusive*

        */s/ Jennifer Edison-Strekal*
        An employee if Thierman Buck Law Firm